CITY OF VICKSBURG v. DAVID HERMAN.

1. MUNICIPALITY. *Changing street grade. Compensation to abutter.* Const. 1890, § 17.

    Const. 1890, § 17, declaring that "private property shall not be taken or *damaged* for public use except on due compensation being first made to the owner," etc., embraces within its inhibition municipalities as well as all other persons, natural or artificial; hence a city, by lowering an established grade, according to which abutting lots have been improved, must compensate the owner for all damages sustained thereby.

2. SAME. *Measure of damages. Full compensation.*

    In such case compensation is not limited to the amount necessarily expended in building a wall to support the lots, but should include all damages, direct and consequential, sustained by the owner.

FROM the circuit court of Warren county.

HON. JOHN D. GILLAND, Judge.

The opinion states the case.

*Booth & Anderson*, for appellant.

Before the adoption of the constitution of 1890, which, by § 17, provides that private property shall not be taken or *damaged* for public use except on due compensation, it was well settled that a municipality was not liable to property holders for consequential damages to their property caused by a change in the grade of its streets, so long as it did not invade private rights and the work was carefully done. Dillon on Mun. Corp., § 987. Does the insertion in the new constitution of the word "damaged" change its rule? Mr. Dillon thinks not, especially in reference to a grade line for the first time established. While appellee purchased his property in 1883, it cannot be said that he purchased with a view to any grade, as the grade, though established, had never been actually made. We admit that if the street had been actually graded, and property holders had improved the lots in accordance therewith, and the city should afterwards change the grade, a case for the application of the new constitution would be presented.

*Gibson & Henry*, for appellee.

It is too late to quarrel with the policy of our law that compels compensation to the owner of private property damaged for public use. Constitution 1890, § 17. The term "damaged" had a fixed legal meaning at the time of its insertion in the organic law; the word must be understood in the light of the legal construction of those courts theretofore passing upon it, and this makes irrelevant the private opinion expressed by Dillon in his valuable work. See 125 U. S., 161; 78 Mo., 107; 119 Penn., 541; 16 W. Va., 402; 77 Ill., 194; 67 Ga., 386; 80 Ala., 489; 16 Fed. Rep., 444.

Appellee bought his property with reference to an established

grade, so that the very authorities relied on by appellant are against its proposition. See 96 Penn., 331; 150 *Ib.*, 589; 25 W. Va., 226; 94 Mo., 574; 115 *Ib.*, 258; 31 Nev., 635.

The verdict is not excessive. The evidence shows the depreciation in value of at least one-third. This alone would give more than the modest verdict awarded.

WOODS, J., delivered the opinion of the court.

This is an action brought by the appellee against appellant for the recovery of consequential damages for alleged injuries resulting to certain lots in the city of Vicksburg by reason of the grading of Belmont and Monroe streets, in that city, in the year 1893, upon which said lots abutted. To all the counts of the declaration filed, the appellant demurred, and the demurrer being overruled, the appellant then answered with the general issue. Trial was had upon this issue, resulting in a verdict and judgment thereon for $2,000 in favor of appellee; and from this judgment the present appeal is prosecuted.

The facts appearing in the evidence in the record are few and undisputed, except as to the amount of the alleged damages. The verdict of the jury must be held conclusive as to this controverted point, and we dismiss it from our consideration. Substantially, the other evidence may be thus stated, viz.: Herman, the appellee, in the years 1881 and 1883, became the owner of lots 2 and 3, square B, Ryan's survey, and lots 52 and 53 and 54 and 55, Smedes' survey, of the city of Vicksburg; lots 2 and 3, Ryan's survey, fronting fifty feet each on Belmont street, and having no entrances or exits except on Belmont street; lot 52, Smedes' survey, being on the corner of Belmont and Monroe streets, and lots 53, 54 and 55, of the same survey, fronting on the latter street only. In the year 1884, a grade was established on Belmont street, such grade being, as established, about on the surface level of that street as it then was in front of appellee's lots on Belmont street. In the year 1893, a new grade was established for

Belmont street, and the street actually reduced to the changed grade, whereby the level of the street was cut down along the entire front of appellee's lots to a depth of from fifteen to eighteen feet in front of lots 2 and 3, and to a depth of from five to ten feet in front of lot 52, thereby destroying entrance and exit to the residences of the two first named lots. Between the dates of appellee's acquisition of title to the lots and the cutting down of the street to the grade line of 1893, large sums of money had been expended in the erection of valuable dwelling houses on lots 2 and 3, and in the improvement of the premises generally.

It will at once be seen, now, that the appellee's supposed right to recovery rests upon and springs out of the seventeenth section of the constitution of 1890, which declares that "private property shall not be taken *or damaged* for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law." The italicized words above, "or damaged," appear in no former constitution of the state, and must receive such construction as will effectuate the object designed to be attained by their insertion in the fundamental law.

Under our former constitutions, which provided only for due compensation to the owner for taking private property for public use, it had been long held that, to entitle the private owner to compensation for the taking of his property for public use, there must be an invasion of the property, a trespass upon it, and an appropriation of it to public use. There must have been, formerly, that which amounted to a deprivation of the owner of his property; and merely consequential injuries, resulting from the loss or impairment of some rights incident to the use or enjoyment, there being no invasion of the property itself, were not covered by the constitutional prohibition. Such was the law as understood and applied before the incorporation in the constitution of the new words we have referred to. The words are without limitation or qualification. They em-

brace within their inhibition all those attempting to convert private property to public use, artificial as well as natural persons, municipal and other corporations alike; and they cover all damages of whatever character. We are not to suppose that the framers of the new constitution employed these additional words, all-embracing in their signification and far-reaching in their application, aimlessly and unadvisedly. As the law theretofore was, the taking of private property for public use without due compensation to the owner was inhibited, and the rights of the private person sufficiently guarded. But we are bound to suppose, that, in the judgment of the framers of the new constitution, wrongs were committed by those exercising the right of eminent domain for which there was no legal redress, and hardships endured by the citizen for which there was no remedy. The citizen was already protected against the taking of his property for public use without due compensation first made, but there was no protection against injuries to the rights of the owner of private property less than the appropriation of the property itself. To have inserted the words "or damaged" in the new constitution, to cover cases already perfectly provided for in the old constitution, would have been utterly meaningless. The citizen must now be held, under this new provision of our fundamental law, to be entitled to due compensation for, not the taking, only, of his property for public use, but for all damages to his property that may result from works for public use. He is now secured in his property, and his use and enjoyment of his property. The burdens formerly borne by the citizen, resulting from damage done his property by a diminution or destruction of his right to use and enjoy his own, were designed by this new constitutional rule to be placed upon those by whose action the diminution or destruction was wrought.

With the wisdom of the new rule we need not concern ourselves. It may be, as is intimated by counsel for appellant, that the imposition of liability for consequential damages on

municipal corporations will hamper and retard them in the improvements deemed by them necessary to be made on their highways, but the argument *ab inconvenienti* for the corporation, it is well to remember, was that employed heretofore by the citizen, robbed of the complete use and enjoyment of his property, when he inveighed against the inefficacy of the former law to redress consequential injuries inflicted upon him by corporate rapacity. The absolute justness of a rule which forbids the invasion. and impairment of the citizen's rights to the use and enjoyment of his property, as well as the actual taking of such property without compensation, to our minds, is beyond controversy. The public benefits derivable to the municipality from the losses of the private property owner, in the taking or damaging of his property for the use of all the citizens of the municipality, should be paid for by the whole body of the corporation, and not by the helpless owner whose property is taken or damaged, as it seems to us, and as the present constitution plainly declares.

But there is another consideration which presses on us with overwhelming force in the discussion of this question. The new language employed in our constitution was incorporated in it by the august body which framed that instrument, with full knowledge of the interpretation put upon like words found in the remodeled constitutions of sister states by their highest courts, and by the supreme court of the United States. Other states had come to see the hardships constantly occurring to owners of private property in injuries to their rights occasioned by damaging the citizen where there was no actual taking of his property, and undertook to afford redress for all injuries not caused by a taking, by inserting in their fundamental laws the new words which were introduced into our constitution of 1890, and these words have had their proper construction defined by their highest judicial tribunals.

So far as our research has gone, these words appear to have been first engrafted in the constitution of Illinois, in the year

1870.  After some "oscillation" of the supreme court of that state, as was said by another, it is now settled, by repeated adjudications in that state, "that, under this constitutional provision, a recovery may be had in all cases where private property has sustained a substantial damage by the making and using an improvement that is public in its character; that it does not require that the damage shall be caused by a trespass or an actual invasion of the owner's real estate; but, if the construction and operation of the railroad or other improvement is the cause of the damage, though consequential, the party damaged may recover." *Railroad Co.* v. *Ayres*, 106 Ill., 511; *Rigney* v. *City of Chicago*, 102 *Ib.*, 64; *City of Elgin* v. *Eaton*, 83 *Ib.*, 535.

The supreme court of the United States, in the case of *Chicago* v. *Taylor*, 125 U. S., 161, after quoting the language of the supreme court of Illinois, quoted above by us, says: "We concur in that interpretation. The use of the word 'damaged' in the clause providing for compensation to owners of private property appropriated to public use, could have no other intention than that expressed by the state court. Such a change in the organic law of the state was not meaningless. But it would be meaningless if it should be adjudged that the constitution of 1870 gave no additional or greater security to private property, sought to be appropriated to public use, than was guaranteed by the former constitution."

In California it is held, under the provision of the constitution of 1879 of that state, which declares that "private property shall not be taken or damaged for public use, without just compensation having been first made to the owner," that a municipal corporation is liable for such special consequential damages as the adjoining owner receives over and above the common injury to the other abutting lot owners on the street or the general public, in raising the grade of such street. *Reardon* v. *San Francisco*, 66 California, 492.

In *Werth* v. *City of Springfield*, 78 Mo., 107, we find this

language used in the consideration of the meaning of the provision of the constitution of 1870 of that state, which declares "that private property shall not be taken or damaged for public use without just compensation," viz.: "When property is damaged by establishing the grade of a street, or by lowering or raising the grade of a street previously established, it is damaged for public use within the meaning of the constitution." This language is quoted as authority in the recent case of *Gibson* v. *Owens,* 115 Mo., 258.

In the case of the *City of Atlanta* v. *Green,* 67 Ga., 386, where recovery was sought by appellee for damage to his property occasioned by raising the grade of a street, it is said by the supreme court, in discussing the meaning of the words "or damaged," introduced into the constitution of that state, in the first paragraph of the third section of the bill of rights, declaring "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid," that "the article does not define whether the damages shall be immediate and direct or consequential. Any damage to property for public use must receive its compensation. It may be, and often, no doubt, will occur, that the consequential damage may impose a more serious loss upon the owner than a temporary spoliation or invasion of the property. We must presume the convention intended that any damage, whether direct or consequential, done to property for public use must be compensated for."

Other cases in other states might be cited in support of this view, but time fails us. We content ourselves with saying, neither the research of the learned counsel for appellant nor our own has brought to light any adjudication holding adversely.

The single authority cited and relied upon by appellant's counsel is Dillon's Municipal Corporations, vol. 2, 987, and following sections. But a close examination of text of that work from section 987 to section 995, inclusive, will show that counsel

is in error in supposing that Dillon is in direct opposition to the views of all the courts of last resort which have passed upon this question. Says Dillon's work: "The rule is well settled, and has, as we shall see in the course of the present chapter, very extensive application to the acts of municipal corporations, viz., that such a corporation, when it confines itself within the limits of its power and jurisdiction, is not liable to an action for consequential damages to private property or persons (unless it be given by special constitutional provision or by statute)," etc. Section 987. Again, the author says: "Adjoining property owners are not entitled, of legal right, without constitutional or statutory aid, to compensation for damages which result as an incident or consequence of the exercise of this power [meaning, as reference to the text discloses, the power to establish and change the grade of streets, among other things] by the state, or the municipality by delegation from the state." And, in section 995, in considering the question of municipal liability for consequential damages under special constitutional provisions, the learned author uses this language: "But where a grade has been officially established, and particularly where improvements have been thereafter made according to such established grade, and it is afterward changed to the injury of the abutting owners, there is a strong natural equity in their favor for compensation. This is manifest by the frequency of statutes creating liability for damages caused to property, and especially to improved property, by a change of an established grade. For the reasons above suggested, it seems to us that, on principle, the mere provision of the constitution imposing a liability for property damaged for public use does not create a liability on the part of the municipality for reducing the natural surface of the street, in the course of its normal and ordinary improvement for street purposes proper, to a grade line for the first time established." This last quotation is direct authority in support of appellee's right to recover on the disclosed facts of this case. Here there is shown

an established grade in 1883, and a change of grade in 1894, after appellee had expended several thousand dollars in improving the lots, whereby their value has been greatly depreciated. This is the case before us, and our remarks are to be limited to this case thus presented to us.

We cannot agree with appellant's contention as to the amount of the damages awarded. While appellee testified that he had expended $1,000 in building the wall to prevent the tumbling of his lots into the street, and to secure the poor ingress and egress now left him, this was by no means the measure of his recovery. The lots themselves are shown to have been immensely damaged by the cutting down of the street in front of them to the grade level of 1894. There is abundant testimony to warrant the amount given appellee by the jury.

The action of the enlightened court below, in the various rulings complained of, was in accordance with the views hereinbefore announced, and the judgment is accordingly

*Affirmed.*