WILLIAM P. RICHARDSON *v.* BOARD OF MISSISSIPPI LEVEE COMMISSIONERS.

LAWS. *Damage to property. Assessment. Constitutional law. Constitution 1890, secs.* 17, 233. *Laws* 1865, *p.* 51. *Laws* 1884, *p.* 163.

By section 17, constitution of 1890, it is provided as follows: "Private property shall not be taken or damaged for public use except upon due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law;" and by section 233 of same instrument it is provided as follows: "The levee boards shall have, and are hereby granted, authority and full power to appropriate private property in their respective districts for the purpose of constructing, maintaining and repairing levees therein, and when any landowner or other person interested therein shall object to the location or building of a levee thereon, or shall claim compensation for any land that may be taken, or for any damages he may sustain in consequence thereof, the president, or other officer or agent of such levee board or owner of such land, or any other person interested therein, may forthwith apply for an assessment of damages to which such person claiming same may be entitled, whereupon the proceeding as now provided by law shall be taken." *Held,* that the owner of land damaged by the taking of the land of another, is entitled, under the foregoing constitutional provisions, to maintain the proceeding for the assessment of his damages provided for by the act of 1884 (Laws, p. 163), amendatory of the act of 1865 (Laws, p. 51), and that the "commissioners to assess levee damages," provided for by said first mentioned act, have jurisdiction to hear and determine his claim. *Vicksburg* v. *Herman,* 72 Miss., 211, cited.

FROM the circuit court of Bolivar county.

HON F. A. MONTGOMERY, Judge.

Richardson, the appellant, was plaintiff in the court below, and the Board of Mississippi Levee Commissioners was defendant there.

This case arose out of the construction of a levee, which has since become known as the "Huntington Short Line," in Boli-

var county. In 1897 the Board of Mississippi Levee Commissioners determined to construct a new levee, and the line of the proposed levee, instead of following the concaved bend of the river bank, as did the old line of levee, cut across said bend, leaving the old line of levee at a point a short distance above Huntington landing on the Mississippi river, and striking the old line again at a point farther down the river, the distance from the point of departure being, in round numbers, four miles by the new line and eleven miles by the old line, the proposed line thereby leaving outside of the levee line, or between the new levee and the river, a large body of land, a portion of which is owned by appellant.

The proposed line crossed, and when constructed would dam up, a bayou known as "Black Bayou," rising on or near the land of appellant. The Board of Mississippi Levee Commissioners condemned the right of way for its new line, but the proposed levee line did not touch the land of many of the landowners owning land between it and the old line of levee, and did not touch the land of appellant, but appellant claimed that his property would be damaged by the construction of said levee, from the fact that it would dam up Black Bayou, which drained his property, and appellee failing to summon the "commissioners to assess levee damages," to assess the damages which would be inflicted upon his property, appellant filed a petition asking that said commissioners assemble to assess said damages, in accordance with which the commissioners did assemble, but an objection was interposed by the appellee to their assessing any damages, on the ground that under the act creating them they had no jurisdiction to assess damages except where the landowners' property was actually taken by the proposed levee, and that this proposed levee did not touch, and therefore did not take, appellant's property. The commissioners accepted this construction as correct, and rendered an award declining to assess damages for the reasons stated. From this award appellant prosecuted an appeal to the circuit

court, and the same objection being interposed by appellee, said court concurred in the view adopted by the commissioners and dismissed the appeal, and from that judgment this appeal is prosecuted.

The case involves the construction of the act of 1884, chap. 169, page 163, *et seq.,* and of secs. 17 and 233 of the constitution of the state of Mississippi, adopted in 1892.

The portions of the act of 1884 which it seems necessary to consider, are as follows:

After providing for the creation of the commissioners, the oath to be taken, that they will make a just and true award of the compensation to be paid any land holder, or land holders, or other persons, for the appropriation of their property for the purpose of building, repairing or maintaining the public levees, it provides that:

"Said commissioners, in making up their award, shall determine the cash value of the land or material occupied or used, or to be occupied or used, for the right of way of said levee, or for other levee purposes, and also damages caused to the owners' adjacent property by reason of the use of the land, or other property, for right of way for said levee, or for other levee purposes, and such cash value and damages shall make up the sum of their said award.

"The remedy hereby provided for determining the compensation and damages to be paid for the right of way, and for the use of material and other property used by the levees may be resorted to either by the said Board of Mississippi Levee Commissioners or any other persons interested, and shall be exclusive of all other remedies."

Secs. 17 and 233 of the constitution of 1892, so far as concerns this controversy, are quoted in the syllabus.

*Alexander Y. Scott,* for appellant.

Our discussion shall first proceed as though the constitution of 1890 was not in existence, and then we will discuss the meaning and intent of that constitution.

The damming of a natural water course, causing back flowage which floods lands, is a taking of private property within art. 1, sec. 10, of the constitution of 1869.

The argument may be presented from two points of view: (1) As to what appellants have lost; (2) as to what appellees seek to acquire.

1. The rights of a riparian proprietor in a nonnavigable water course are often seemingly treated by the authorities as an easement, and while the legal rules governing the rights of the parties and their remedies are the same as in easements, technically speaking the property one has in a stream is not an easement, but is part of the land itself, and is, in fact, real estate.

The authorities, as far as I can find, where the matter is discussed at all, treat this right as distinct and separate from an easement.

In *Sokoe* v. *Singer,* 8 Ell. & B., 31, the court say: "The right to the natural flow of water is not an easement, but a natural right."

And the right of an owner to have water come to and pass unobstructed from his property is "inseparably annexed to the soil, and passes with it, not as an easement, not as an appurtenance, but as parcel," and is a corporeal right. *Johnson* v. *Jordan,* 2 Met., 234; *Scriver* v. *Smith,* 53 Am. Rep., 220-224; Washburn on Easements, 19: *Ib.,* 276. It is a part of the inheritance, and passes with it. Angell on Water Courses, 90.

This right is an easement or appurtenance, but is inseparably annexed to the soil, and is parcel of the land itself. *Wardsworth* v. *Tillottson,* 39 Am. Dec., 391-394; *Parker* v. *Griswold,* 17 Conn., 300; *Harding* v. *Stamford Water Company,* 41 Conn., 92; *Tillottson* v. *Smith,* 64 Am. Dec., 355.

Rights in a natural water course can only be extinguished by operation of law, the act of God or the act of the owner. *Mississippi, etc., R. R. Co.* v. *Mason,* 51 Miss., 234-247.

It therefore appears that the right of the owner in a natural

water course is a natural right, and that such right is actually land or real estate.  It is a "parcel of land" "incident to ownership," passes with the land, and can only be acquired in the same manner that the land can be acquired.

This natural right consists in a right to use the water 'for domestic purposes for man and beast, and for artificial purposes, such as irrigation and the driving of machinery.  The right to the watercourse, and that it shall be maintained "as nature made it," is actual real estate.  The constitution says: "Private property shall not be taken."  A natural water course, constituting the sole drainage of a large plantation, is a parcel of the land and necessarily "incident to ownership," "passes with the land" not as an easement or appurtenance, but as parcel, is property within the meaning of the constitution, and has universally been held to be such.  *McCord* v. *High,* 24 Iowa, 336-348; *Emery* v. *Lowell,* 104 Mass., 13; *Gardner* v. *Newburg,* 2 Johnson Ch., 161.

The property which the appellant has in the water course is as absolute as the property in the land of his plantation, and is a corporeal thing, not incorporeal.  Any interference with his rights in this stream is as actual an appropriation of his property, and as actual an ouster therefrom, as though the appellees had appropriated a part of the earth which goes to make up his plantation.  The damming of this water course falls within the strictest interpretation of the word "taken."

If, however, the court should decide the authorities holding the above position are not well considered, there can be no doubt that the thing claimed, the right of drainage insisted upon by the appellant, is an easement.  10 Am. & Eng. Enc. L. (2d ed.), 398.

All easements are estates in land.  *Miles* v. *Munson,* 108 N. Y., 453; *Pinkum* v. *Eau Claire,* 81 Wis., 301.

An easement constitutes a freehold estate.  *Chaplin* v. *Commissioners of Highways,* 126 Ill., 264-273.

In Mississippi it is held that an easement is an interest in

land, and a grant by parol is obnoxious to the statute of frauds. *Bonelli* v. *Blakemore,* 66 Miss., 136.

The period for acquiring an easement in land corresponds with the local statutes of limitations as to land. *Alcorn* v. *Sadler,* 71 Miss., 634-640.

An easement, being an incorporeal hereditament, an interest in real estate, attached to real estate and growing out of it, is property within the meaning of the constitution.

The constitutional provisions apply to all incorporeal hereditaments, as has been constantly and universally decided. Franchises granted to corporations are property. A grant of a franchise is not in principle distinguished from a grant of any other property. *Dartmouth College* v. *Woodward,* 4 Wheaton, 699-701.

In *Theobold* v. *Louisville, etc., Ry. Co.,* 66 Miss., 279, the question presented to the court was, "whether the abutting owner of land on a public street has such an interest in the street as to require condemnation, or his consent, before the street can lawfully be used by a railway company for constructing its tracks and operating its trains on the street," and the court held that such use of the street would be a taking of the abutting owner's property within the meaning of the constitution.

The court, in this decision, recognized that there is a distinction made in some of the authorities between where the public had only an easement in the street and where the public owns the fee in the soil, and did not decide what would be the rule of the court in the latter case, merely saying that they did not see why any distinction should be made.

However, subsequently to this decision, in *Stowers* v. *Postal Tel., etc., Co.,* 68 Miss., 559, the court holds that whether the fee is in the city or in the abutting owner, that a municipal corporation cannot authorize a telegraph company to construct its line along a public street without first making compensation to the abutting owners, and holds that the authority to the com-

pany by the city of Vicksburg would protect the company from an action by the public, but not by an individual, damaged thereby; consequently an injunction was sustained against the erection of telegraph poles until condemnation proceedings could be had and due compensation made to the owners, and it must be remembered that these decisions were made under the constitution of 1869, before the words "or damaged" were added by the present constitution, sec. 17.

It needs no authorities to sustain the proposition that an abutting owner simply has an easement in the street where the fee is in the public. This easement is held to be property under the decisions, and any interference with it is taking of property.

In principle there can be no distinction between an easement in a street and an easement in a water course, and the rules governing in one case must be applicable to the other.

Clearly, then, an easement in this state is property within the constitutional provision.

2. But what does the levee board, defendant herein, seek to acquire? The right to dam a natural water course, and to flood the complainant's land by back flowage. This right is universally admitted to be an easement. It is the right to oust the complainant from the use of that part of the land that is flooded, and can only be acquired by grant, prescription, or the right of eminent domain. After it was acquired the defendant could be but deprived of it. It would be property in them. So the complainant cannot be held to lose it without compensation. If it would be property when acquired by the defendant, it is property when owned by the plaintiff. *Eaton* v. *Boston Railroad Co.,* 12 Am. Rep., 161.

The complainant's property, then, having been taken for public use, the question for the court is, whether the remedy invoked by the complainant is the proper one, and we shall consider it first under the constitution of 1869, as above set forth.

The defendants contend that complainant's land, not being touched, the commissioners have not jurisdiction. They do

not question the damage nor the amount of it, or question complainant's right to recover in some other action, but they insist that he cannot recover in this suit, or demand prior payment.

Reviewing the act of 1884, it is clear that in the cases enumerated in this act, the commissioners alone would have jurisdiction, and that the method pointed out by the act is the only remedy that could be invoked by plaintiff. If an action of trespass had been instituted asking damages for any of the enumerated causes, it would have been defeated upon proper plea. In other words, it is a well settled principle of law that whenever there is a general statutory remedy provided by the legislature, that remedy must be followed and is exclusive. *Hooker* v. *Canton, etc., Railroad Co.,* 29 N. H., 146; *Stevens* v. *Canal Company,* 12 Mass., 466; *Dodge* v. *Commissioners,* 3 Met., 380-1-2; *Brown* v. *Beatty,* 34 Miss., 227; *Levee Commissioners* v. *Johnson,* 66 Miss., 248.

But if the act should have failed to provide for any damages to which a citizen was entitled under the constitution, he could have brought an action of trespass, or, in case had he desired, could have proceeded by injunction. *Indiana Central Railroad Co.* v. *Beden,* 10 Ind., 96; *Prop's Locks and Canals* v. *Railroad Co.,* 19 Cush., 385-388; *Esterbrook* v. *Railroad Co.,* 12 Cush., 244.

A petitioner under a statute can get nothing more than the statute gives him. The construction of the statute and not its constitutionality is, then, the question. *Eaton* v. *Railroad Co.,* 12 Am. Rep., 166.

The act, however, is broader than this, and applies to cases where land is not taken. The words are "damages to the owner's adjacent property by reason of the use of his land or other property."

It must be remembered that the act does not say that the levee must run over the land, nor does it say that it must touch the land in any place. The words are "land or other property" used for right of way for levee purposes.

Even prior to the adoption of the constitution of 1890, the remedy pursued was the proper one.

Section 233 of the constitution of 1890 delegates to the board full power of eminent domain, and prescribes the method to be pursued, saying that it shall be as established by the act of 1884, and giving the legislature the right to amend the manner of proceedings whenever it sees fit.

Under this constitution and the construction to be placed upon secs. 17, 14, 233 and 238, it matters not whether, under the constitution of 1869, the commissioners would have had jurisdiction in such case as the one at bar, or whether then it was necessary that the lands must have been actually occupied by the levee itself, to give the commissioners jurisdiction. Now they not only have jurisdiction, but they have exclusive jurisdiction of the case.

And in determining the question it becomes necessary to see what additional rights the constitution of 1890 has given to the citizen under said clauses.   Sec. 17 says "private property shall not be taken or damaged except upon due compensation." The words "or damaged" being added must necessarily extend the rights of the citizen, and in those states where this word has been written into the constitution it has universally been construed to enlarge the damages to which a citizen is entitled upon a use of his property for public purposes.

In these decisions the word "damaged" has been universally construed to mean "injuriously affected," and in our own state Judge Woods, in *Vicksburg* v. *Herman,* 72 Miss., 211, says: "They cover all damages of whatever character.  .  .  .   We are not to suppose that the framers of the new constitution employed these additional words, all-embracing in their significance, and far-reaching in their application, aimlessly and unadvisedly."   And "he, the citizen, is now secured in his property, and in the use and enjoyment of his property."

In this opinion Judge Woods examines the decisions in Illinois, Georgia, Missouri, and the United States supreme court,

and after a most elaborate argument, decides that the citizen is now entitled to not only damages for taking, but for all damages to his property, whether direct or consequential, immediate or remote.

In an interpretation of this clause of the constitution the first consideration is, to whom does the enlarged rule apply? Does it apply to all who take private property under the power of eminent domain? Is the constitution a "respecter of persons," extending immunity to one and not to another? Do the rights of the citizens depend upon who seek to encroach upon them, or are those rights fixed and inflexible? In other words, does the constitution give immunity to the levee board and not to the state and other corporations, restricting the citizen to recovering from the levee board such damages only as he was entitled to recover under the constitution of 1869, and enlarging his rights against the state and all other persons whatsoever? It would seem, to state the proposition was to answer it.

*Leroy Percy,* on the same side.

The questions presented by the appeal are, first, whether under the act of 1884 the "Commissioners to Assess Levee Damages" created by that act had jurisdiction to assess appellant's damages, and, secondly, if they had no such jurisdiction under the acts of 1884, was jurisdiction given them under secs. 17 and 233 of the constitution?

Counsel for appellee seem to think that undoubtedly no jurisdiction existed in the commissioners under the act which created them. With this view we cannot agree. It is true that under the wording of that act, where the levee did not actually touch the person's land, ordinarily the commissioners cannot act, because ordinarily the damages would be consequential and remote; but we apprehend that where the proposed levee did take or destroy an easement valuable to the enjoyment of a person's land, that such person undoubtedly had the

right to have his damages assessed by the commissioners, because his property had been taken. That land may be taken without being occupied is well recognized. Appellant claims that his right to drain through a natural water course had been destroyed; that the building of the levee would dam up such water course and flood the land. There should be a liberal construction of the word "taken." The constitutional provision is made for the protection and security of the rights of the individual as against the government, and the term "taking" cannot be limited to the absolute conversion of the real property to the uses of the public, and not include cases where the value is destroyed by irreparable and permanent injury inflicted on it. Any substantial injury to the land, such as discharging water upon it, is a taking within the meaning of the constitution. Mills on Eminent Domain, secs 30, 31.

Our courts have been as liberal and indulgent in protecting the rights of the citizen to the enjoyment of his property against corporate encroachment as those of any other land, and prior to the constitution of 1890, in *Theobold* v. *Louisville, etc., Ry. Co.,* 66 Miss., 279, laid down the principle that a property owner had the right to be protected in an easement, and that the taking thereof was the taking of property, and that "the rights and interests of an abutting owner must be obtained . . . that is, his consent, or by the exercise of the right of eminent domain as in other cases of the taking of private property for public use."

And, further, that "where the abutting owner has simply an easement in the street, while the fee is in the public, or in some other owner, or where he has both the fee and an easement, he is equally entitled to require that nothing shall be done in derogation of his rights." And the court did not base its decision on the idea that the owner's property was damaged, because under the constitution at that time consequential damages could be inflicted without compensation being first paid. If compensation for damage was paid at all,

it was usually at the end of litigation. But the court said that the owner had an easement in the street, and that the easement was a property right, and that the easement could not be taken without compensation having been first made. And in the case at bar the very injury complained of by appellant is that he had an easement in this water course, a right to have it carry off the water from his property, and that this property right appellee proposed to destroy without first making compensation.

But, furthermore, appellant claimed that he would be damaged by the construction of the proposed levee, and that under sec. 17 of the constitution of 1890 he could not be damaged without compensation being first made.

There is no doubt about the meaning of the change made in the constitution of 1890 by insertion of the words "or damaged." The words themselves are simple and plain, and their meaning clear, but whatever ambiguity the subtlety of counsel may have conjured up has been remedied by our court, speaking through Judge Woods, in the case of *Vicksburg* v. *Herman*, 72 Miss., 211, and the other cases following it. There is no doubt that the right of the appellant to be protected from the damaging of his property until compensation is first made is as securely guaranteed to him under the present constitution as his right under the old constitution to be protected against the taking of his property until compensation should be first made.

There is nothing in the language of the constitution, in the policy of our laws, or in the trend of judicial decisions which favor one corporation beyond another at the expense of the individual. Private property shall not be taken or damaged without compensation being first made, whether by municipality or county, railroad or levee board; and where the owner claims that the proposed work damages him and demands that his compensation be ascertained and paid, unless the answer can be made that there is no damage, the corporation engaged in the work must have that compensation ascertained in the

manner prescribed by law, and if there has been a hiatus in the law, and no manner has been prescribed, that work must cease.

In the same instrument that established the further safeguard for the citizen in the enjoyment of his property, is found the article on levees, by which it was intended to found a tribunal for the assessment of the damages which a landowner might claim in the assertion of his constitutional rights, whether for property damaged or taken by the construction of levees, and while we admit that the language of sec. 233 is capable of being construed so as to restrict the jurisdiction of the "commissioners to assess levee damages" to the consideration of cases where the levee has been located upon the land, still it is clearly to us also capable of a broader interpretation, and that broader interpretation is clearly the correct one. It is not to be presumed that the framers of the constitution intended to provide that property should not be taken or damaged without compensation being first made, and then immediately thereafter in creating a tribunal which would have the right to assess damages done by levee building so that the levee boards might be fully equipped to go ahead with their work of protection, and not be hampered by injunctions or interrupted by lack of power because such tribunal had power only to assess damages where the land was actually taken.

There is nothing in the language of the constitution to restrict the owner of land to claiming damages in consequence of the taking of land only where it is his own land that is taken. If one is not the owner of land, or not interested in it, of course he cannot be damaged by the taking. But if he is a landowner, or interested in land, he can claim damages for the taking of his own land, or for the taking of any other land for levee purposes where such taking causes damage to his property. Sec. 233 undoubtedly intended to create a tribunal which could assess every damage to which a party was entitled under the constitution, and the argument against its having

created such a tribunal is a narrow and technical one; one that cannot but result in serious inconvenience and embarassment to the Board of Mississippi Levee Commissioners, whose counsel are urging it upon the court.

*Walter Sillers,* for appellee.

Appellant contends that the commissioners to assess levee damages had jurisdiction of his demand for damages, claimed on the theory that the construction of the Huntington Short Line Levee obstructed his drainage, while the appellees contend that the jurisdiction of the commissioners was limited to the assessment of damages to lands and property actually taken for levee purposes, and that they have no jurisdiction in cases like appellant's, where none of the land was taken for levee purposes.

Section 238 of the constitution prohibits the payment for land because of its being left on the outside of the levee, while sec. 17 provides that compensation shall be paid to the owner whose land is taken or damaged for public purposes. The courts have held that sec. 238 does not prohibit the payment of damages which occur by reason of the obstruction of drainage.

On the theory that his drainage would be obstructed by the construction of the levee across Black bayou, appellant presented his claim to and demanded damages of the levee board.

While admitting appellant's right to damage, if he sustained any by reason of the obstruction of his drainage, we deny his right to the remedy he has invoked. We contend that appellant should pursue his remedy in courts of law. Sec. 17 of the constitution should be construed in a manner consistent with the levee laws and with art. 11 of the constitution. The word "damage" does not apply to remote, consequential damages Nor is the method provided by statute for assessing damages for right of way applicable in cases where the property is damaged but not taken. 7 Enc. Pl. and Pr., 471, and note.

If the rule was different the commissioners would be compelled to ascertain and assess the damages of every landowner living along streams and their tributaries obstructed by a levee or a railroad. The duties of the commissioners would be endless: the damages would be conjectural and their awards unsatisfactory, and of no practical value. Their action would be a useless formality and expense and would seldom be accepted by either party.

It is more sensible and businesslike to require parties claiming consequential damages to propound their claims through a declaration, and prosecute same under the direction of a competent court than it would be to allow a commission unversed in the law to assess damages that have never occurred, "and view" property that has not yet been damaged. For if the damage must be assessed before the property is taken or damaged, the damage cannot be estimated by a commission with any degree of certainty. Their award would be based on remote, possible contingences that might never occur. It would give too wide a range for the allowance of theoretical, speculative damages. To require such damages to be so ascertained, and require the same first paid, would greatly hamper public works, and in cases of levees frequently prevent their construction by consuming the funds of the board in speculative damages.

In the case of *McMahon* v. *Railroad Co.*, 41 La., 827, a provision of the constitution of Louisiana exactly like sec. 17 of our constitution is construed. This state seems to have borrowed this section from the constitution of Louisiana, or states with similar provisions. Georgia, Illinois and perhaps other states had such provisions before sec. 17 was engrafted into the constitution of this state, and the rule that where a constitutional provision is taken from the constitution of another state it will be given the construction it is given by the courts of that state prevails in construing sec. 17. *Daily* v. *Swope*, 47 Miss., 367.

In the Louisiana case of *McMahon* v. *Railroad Co.*, it was

held that where land was not actually taken for the right of way, precedent compensation was not contemplated: by the constitution, notwithstanding it was expressly provided, as in sec. 17 of our constitution, that damages should first be paid.

In the case of *Griffin* v. *Augusta Railroad Co.*, in construing a provision of the Georgia constitution exactly similar to sec. 17, the court held that an injunction should not lie where the property had been taken by a railroad company after it had constructed its road, but party must proceed with his remedy at law. *Griffin* v. *Augusta Railroad Co.*, 70 Ga., 164.

The Illinois constitution of 1870 has a provision like sec. 17, and the same construction has been given it as was given by the Georgia and Louisiana courts. *Penn Mutual Ins. Co.* v. *Weiss*, 141 Ill., 273; *Parker* v. *Catholic Bishop et al.*, 146 Ill., 158.

Payment in advance is required only where the property is actually taken. *Lorie* v. *North Chicago Railroad Co.*, 33 Fed. Rep., 270. It would be a misfortune to the people of the levee district to require precedent speculative damages to be paid on the award of commissioners on theoretical testimony, uncontrolled by the instruction of courts and subject to appeals to sympathies and prejudices of the commissioners. It would be unfair to the taxpayers and open the road to unchecked raids on the treasury of the board.

WHITFIELD, J., delivered the opinion of the court.

The very same section of the constitution of 1890 (sec. 17) which provides that "due compensation" shall first be made to the owner for "private property taken for public use," provides also that it shall not be "damaged" for public use without due compensation being first made. The due compensation is, by the constitution—the supreme law of the land—imperatively required to be first made as well when property is damaged as when it is taken. It is settled by *Vicksburg* v. *Herman*, 72 Miss., 211, that the damages referred to in sec. 17

embrace all damages, direct or consequential, immediate or remote. The measure of the right secured by this section is thus defined and settled by this and previous cases in this state, and includes all private property taken and all private property damaged for public use. The remedy by which both rights are to be secured, sec. 17 declares, is to be prescribed by law. The framers of the constitution, embracing the very ablest legal talent in this state, then proceeded, as to levee boards, to prescribe the remedy, in sec. 233. It is admitted that that section did prescribe the remedy for due compensation for private property taken; it is denied that it prescribed the remedy for such compensation for damages to such property not taken. It is first to be observed that the argument in support of this denial is based almost wholly on the proposition that the damages are consequential, and, hence, not such in character as this board of levee commissioners is a fit or competent body to assess. But this objection is ended by *Vicksburg* v. *Herman.* Without going into an elaborate analysis of the act of 1884 (Laws 1884, p. 163, *et seq.*), it is sufficient to say that the language of sec. 233 of the constitution of 1890 is essentially broader than the provisions of said act, whose machinery it designates and adopts for the purpose of securing as well the new right as the old. Said sec. 233 provides that "when any owner of land, or other person interested therein, shall object to the location or building of the levee thereon, or shall claim compensation for any land that may be taken, or for any damages he may sustain in consequence thereof, . . . the owner of such land, or other person interested therein, may forthwith apply for an assessment of the damages to which said person claiming the same," etc. There is nothing in this language, properly construed, limiting the claim for damages caused by the taking of land to the case of one whose own land is taken. One who neither owns land, nor is interested in land, cannot be damaged by the taking of "any land"—his own or another's. But if one either owns land or is interested in land,

he can have his damages assessed for the taking of "any land,"
his own or another's, if such taking for levee purposes causes
damage to his property. The language is very concise, but is
exactly equivalent to saying: "When any owner of land, or
other person interested in any land, shall object to the location
or building of the levee thereon, or shall claim compensation
for any land that may be taken, or for any damages he may
sustain in consequence of the taking of any land" for levee
purposes, etc. "In consequence thereof," says the section.
"In consequence" of what? Manifestly, as just before stated,
of the taking of "any land." And if it be said that the char-
acter of person who shall "object" or "claim" is defined in
the previous part of the sentence, the answer is that the phrase
"any other person interested therein" does not necessarily
mean interested in the land of the owner whose land is physic-
ally taken, but may well mean any person interested "in land."
Indeed, the word "therein," in the connection in which it stands
—having in mind also the latter clause of the sentence before
referred to—seems naturally to mean "and" merely, "any
land," as said later in the sentence. If the language is suscepti-
ble, possibly, in the strictest literal view, looked at phrase by
phrase, of the narrow technical construction contended for by
counsel for appellee, it is nevertheless clear that it is also
susceptible of the broader and more conservative construction
which we place upon it, which construction but secures the plain
purpose of secs. 17 and 233 to provide for both rights, and a
common remedy for both. Undoubtedly the framers of the
constitution intended to provide a remedy as well for property
damaged but not taken, as for property taken. Could they
have meant to declare in sec. 17 that both rights should exist,
that due compensation was to be first made in both cases, and
then to provide in sec. 233 a remedy for one and not the other?
Can we impute to them the folly of dealing at large with the
whole subject of levees, minutely, in art. 11, with a view to
equipping this board with ample, adequate power in the prem-

ises to secure both rights, of equal dignity, and providing for one only? Why have one remedy pointed out in sec. 233, and leave another to be framed by the legislature? Since private property cannot be damaged till compensation has first been made, the need for providing a remedy for one right at the same time a remedy for the other was provided is obviously exigent, since, otherwise, the whole system of levee construction is paralyzed, and the very object of the constitution thwarted. That cannot be a sound construction which involves such manifest absurdities, if there be another reasonably possible. And we are of the opinion not only that the one we adopt is reasonably possible, but is clearly the sounder construction, whether looking to the letter or the spirit of the instrument. The act of 1884 is merely designated as the mode of procedure, its machinery to be now adapted to the assessment as well of damages to property not taken as of the value of property taken.

There is great force in another view presented in the very ingenious and able argument of counsel for appellant, to wit: That the easement—the right to have the waters of Black bayou flow unobstructed in their accustomed channel—is property within the meaning of the constitution of 1869 even, just as clearly as the easement of the abutting owners on the streets, in *Theobold* v. *Ry. Co.,* 66 Miss., 279, and in *Stowers* v. *The Postal Tel. Co.,* in 68 Miss., 559, in those streets was, both of said cases having been decided under the constitution of 1869, but such easement was private property as effectually taken here, by the total destruction of the land on which the water was backed and ponded, within the meaning of this word "taken" as settled by judicial construction, as was the land on which the levee was located; and that, under that view, the remedy provided by the said act of 1884 was appropriate without reference to the constitution of 1890, and we are not to be understood as saying that this is not a sound view. But we prefer to rest the decision on the ground first indicated.

It only remains to be said that the Georgia case cited by counsel for appellee went upon estoppel; the Illinois cases were decided under a constitution not having the word first in it; the Louisiana case we are not able to approve, under our view that all damages are embraced within the protection of sec. 17.

It may well be said that the question is one of difficult solution, and the learned counsel for the levee board were quite right in insisting upon an authoritative announcement from this court.

It follows that the demurrer to the plea to the jurisdiction should have been overruled.

*Judgment reversed and case remanded to be proceeded in in accordance with this opinion.*