CITY OF JACKSON v. LULA B. WILLIAMS ET AL.

[46 South., 551.]

1. MUNICIPALITIES. *Ordinances. Validity.*

If a municipal ordinance relating to special improvements and assessments comply with the statutes on that subject its validity is not affected by a conflict with a prior ordinance intended to fix a general rule in such cases.

2. SAME. *Special assessments. Sidewalks. Code 1892, § 3011. Description of improvement.*

Under Code 1892, § 3011, empowering a municipality to levy special assessments in certain cases, it is essential for the special improvement to be definitely described in the resolution declaring it necessary, or in plans on file to which the resolution refers, or in a subsequent resolution or ordinance seasonably passed.

3. SAME. *Insufficient description.*

A resolution declaring it necessary that a sidewalk be built on a designated side of a certain street between two points, and that the abutting owner, be notified to construct the same or petition against so doing within twenty days, does not sufficiently describe the sidewalk and, unaided by a sufficient description otherwise given, is invalid.

4. SAME. *Code* 1892, § 3012. *Notice.*

Under Code 1892, § 3012, providing that the special improvement may, upon failure of the owner of an abutting lot to do so, be constructed by the street commissioner, on the order of the mayor and board of aldermen, at the cost of the owner, the five days' notice to the owner or occupant therein provided is a condition precedent to the right of the municipality to assess the cost of construction on the lot.

5. SAME. *Necessity for strict compliance with statute.*

A municipality proceeding under a statute providing for public improvements acts under special powers, conferred under special circumstances, and must pursue with strictness all the conditions precedent to its right to exercise the power.

6. SAME. *Eminent domain. Taking private property for public use.*

The right of a municipality to take or damage private property for public use is no different than of any other person or corporation having the right of eminent domain.

7. SAME. *Constitution* 1890, sec. 17. *Compensation. Sidewalk grade. Change of. Original lay of land.*

Under constitution 1890, sec. 17, providing that private property shall not be taken or damaged for public use, except upon due compensation being first made to the owner, a citizen may recover for damages caused him by an invasion of his property rights for a public use, and hence may recover from a municipality for damages to abutting land caused by a change of grade in a street, whether occasioned by the initiation of the grade for the first time or by the altering of an established grade, including injury to shrubbery, fences, etc.

FROM the chancery court of, first district, Hinds county.

HON. G. GARLAND LYELL,. Chancellor.

The city of Jackson, appellant, was complainant in the court below; Mrs. Williams and many others were defendants there. The object of the suit was to enjoin defendants from prosecuting their several suits at law against the city for damages alleged to have been done their respective lots on South State street by the city's construction of a sidewalk on the west side thereof, and to charge the respective lots with the cost of the sidewalk in front of it. The defendants recognized the jurisdiction of the court to enjoin the several suits at law, made

their answers cross-bills and propounded therein their claims for damages. The court below denied the city relief so far as related to charging the cost of the sidewalk on the lots and gave each of the defendants a personal decree for damages, but in amounts much less than the sums demanded by them. The city appealed to the supreme court and the several defendants prosecuted cross-appeals.

*McWillie & Thompson,* for appellant, and cross-appellee.

On the 6th of December, 1904, the Mayor and Board of Aldermen of the City of Jackson operating under Code 1892, Chapter 93, and the amendments thereto, adopted an ordinance adjudging it necessary that a sidewalk should be built on the west side of South State street, from Tombigbee to Silas Brown streets (the ordinance also covered parts of other streets) and ordering that the owners of abutting property should be notified to build the same or petition against the construction within twenty days; the ordinance was authorized by Code 1892, § 3011, and was made operative at once upon its passage.

We are told, however, that it is void: *first,* because it does not describe the kind and length of sidewalk or the height of embankment required, and *second,* does not name the abutting owners. A description of the sidewalk, if in fact the term sidewalk be not itself sufficiently descriptive is to be found in the general ordinances of the city, then in force, wherein specifications for sidewalks are specifically laid down, and of course the ordinance of September 6, 1902, is to be read in connection therewith. Revised Ordinances, p. 81, Sections 330, 331. Under the ordinance a sidewalk could be constructed of any suitable material giving "a surface not inferior to that of a well-laid pavement of all-hard brick on a good foundation." The basis for Judge CALHOON's withholding his assent to the conclusion of the court in the case of *Edwards House Co.* v. *City of Jackson,* 91 Miss., 429, 45 South., 14, does not exist in the case on trial.

It certainly was unnecessary that the abutting property owners should be named in the ordinance; they are described there as the property owners abutting said sidewalk, meaning of course the owners of property abutting the same, since people do not abut sidewalks. It was unnecessary that they should be named in the ordinance at all, nor was there any need for the ordinance to direct that the property owners should be notified. The ordinance is directed by the statute, Code 1892, § 3011, to be published and this publication was the only notice to be given of its passage. And the publication is affirmatively proved, although of course its validity and effect did not depend on publication. The board had power (Code 1892, § 3006) to make and did make the ordinance operative from and after its passage.

The ordinance in the absence of a petition protesting against the improvement gave the mayor and board of aldermen after the expiration of twenty days from its passage jurisdiction to have the sidewalk constructed and to levy a special assessment for its cost. *Edwards House Co.* v. *City of Jackson, supra.*

Having jurisdiction in the premises and being authorized to do the work (Code 1892, § 3011) before, during or after the collection of the special assessments, and the owners having failed to make the special improvement (there is no pretense of them having done so) the mayor and board of aldermen proceeded to give the five days notice required under Code 1892, § 3012, to the parties in interest. The statute requires the five days notice to be given to owner, or occupant, or in case of unoccupied property by posting a written notice thereof.

The court below in its final decree erroneously adjudged the ordinances of December, 1904, and of October 3, 1905, to be utterly void and thereby deprived the city entirely of the right to collect its special assessments or any part thereof and also deprived the city of all right to diminish its liability to those of defendants, if any, whose property was damaged for public use. Property is not both benefited and damaged at the

same time by the same acts; and improvements are to be deducted when property is not taken but is claimed to have been damaged for public use. No man can justly say property is damaged without considering incidental improvements, if any. The chancellor refused to consider the assessments which measured the benefits and allowed all elements of damage undiminished.

Certainly the ordinance of December, 1904, was valid and gave the mayor and board of aldermen jurisdiction and nothing more than mere irregularities thereafter can be pointed out in the proceedings. *Edwards House Co.* v. *City of Jackson, supra.*

Having erroneously found the ordinance to be void the court below further adjudged that "the notices required by the statute and the city ordinances were not served upon the owners or occupants of the property in question." The chancellor does not enumerate what notices the statute, according to his conception, requires to be given; but the language of his decree shows that he deemed more than one necessary, when by correct interpretation only one was required. The court below adjudged that some notice provided by some ordinance was not given, when the failure to give an unnecessary notice, even if directed by an ordinance, could not render invalid a proceeding under and in accordance with Code 1892, §§ 3011, 3012, especially in the absence of evidence that the parties in interest acted on the faith of the ordinance.

The court below, declining to adjudge that any part of any one of the defendant's property had been taken by the city, proceeded to decree a sum of money to be due each on account of damages to their property, wholly ignoring and disallowing the special assessments. In order to do this, however, the chancery court determined that the mayor and board of aldermen did not have jurisdiction of the subject matter, and that its ordinance adjudging a new sidewalk necessary propounded an untruth and that a new sidewalk was unnecessary. The municipal au-

thorities under Code 1892, §3011 adjudged a new sidewalk necessary; the chancery court exercised appellate jurisdiction, without warrant of law, and decreed the new sidewalk unnecessary. To which tribunal is confided the determination of the question?

The chancellor further found that the city had previously established a grade from which it departed in the construction of the sidewalk in question when, *according to the evidence,* the old brick makeshift of a sidewalk was laid upon the natural surface of the earth, without the city having undertaken to establish a grade. We all know that until water-works and sewerage systems are installed in a town but little if any attention is paid to grades in the absence of unusual inequalities in the lay of the land; and such inequalities are shown by the testimony not to be existent along South State Street.

The fundamental error into which the court below fell was in holding the ordinances void, and as the decree, we think, will have to be reversed for that reason, we do not go more fully into detail touching other errors. Surely there is no error in the record to the prejudice of cross-appellants.

*Green & Green,* for appellees, and cross-appellants Mrs. Williams, Mrs. Lehman, Mrs. Ellis, Misses Cavanaugh and Paul Williams.

The city's claim to recover the assessment arises under Code 1906, §§ 3335, 3316, 3318, and the city ordinance in pursuance thereof. Section 3335, with sections 3316 and 3318 provides that the mayor and board of aldermen shall have power "To cause to be constructed and maintained sidewalks, determine the materials, plans and specifications and grades of the same, and to levy and collect taxes, by special assessment, for the payment of the same." "To exercise full jurisdiction in the matter of streets, sidewalks, sewers, and parks; to open, lay out and construct the same; *to repair, maintain, pave, sprinkle, adorn, and light the same.*"

It will be noted that under these sections the board of aldermen is to "determine the materials, plans and specifications and grades" of sidewalks.   Under the proof in this case the board of mayor and aldermen never fixed the grade for the change, but it was done, as was all the other sidewalks and grades, under the caprice of the city engineer.   This power delegated to the mayor and board of aldermen cannot be re-delegated to the city engineer.   27 Am. & Ency. of Law (2d ed.), 122, 123, 124.

Thus instead of executing the statutory power conferred by Code 1906, § 3335, the board leaves the materials, plans and specifications, and grades of the sidewalk to the city engineer presumably.   The ordinance, Sec. 326, required that the ordinance for a sidewalk shall describe the kind and length of sidewalks to be constructed "with the names of abutting land owners."   The ordinance of September 6, 1904 does not name the abutting property owners, but merely requiring that the property owners abutting said sidewalks to be notified to build same, or petition against building of same in twenty days.

Thus in the imposition of a special assessment, the essential of notice and opportunity to be heard is practically dispensed with.   *Stricti juris* is the rule for special assessment.   The chancellor held this ordinance of December 6th to be void.

On the evidence he also held that the ordinance of the board of October 3, 1905 was void.   It provides that "a special assessment be made against the following property on account of sidewalks built by the city, and a lien is hereby established on each of the same.   Sec. 2, that the city clerk is instructed to proceed to assess and collect said tax as follows:—to-wit: Mrs. J. Dornes $1.32   .   .   .   A. Lehman, $166.61; Misses Kate and Minnie Cavanaugh $139.50   .   .   .   Mrs. Etta Ellis $170.-77; Charles Williams' estate $333.15.

The finding of facts of the chancellor that the amounts of damages sustained by the several persons, cross-appellants represented by us, was not sufficient.

*Alexander & Alexander* and *George B. Power,* for appellees and cross-appellants, Eva B. Feibelman, Abraham Feibelman and Frederick Feibelman.

The service of the five days notice is a jurisdictional fact—it is required by the statute and by the city ordinance—without giving it in the manner required the city had absolutely no authority to proceed and all its subsequent acts in this respect were wholly unwarranted.

The statute requires that the resolution declaring such work or improvement necessary shall be published as ordinances are required to be published. Section 326 of the city ordinances requires that the treet commissioner shall notify the land owners and it is not contemplated that his notice shall be by publication. It is conclusively shown, and so found by the chancellor that the ordinance was not complied with and that notice was not given.

"If a street be opened and used upon the natural surface as a grade line and it is recognized and treated by a city or town as a public street and owners of lots upon it build with reference to such natural grade line, and it is changed, the city or town is liable to lot owners for damages consequential upon the change of grade though no grade for the street was ever adopted by the cunicipality. . . ." *Vicksburg* v. *Herman,* 72 Miss., 220.

Such natural grade thus became the established grade. It is not the making of the paper grade that inflicts the injury but its application to the ground. It is the direct physical disturbance of a right which the owner had enjoyed in connection with his property that gives action. *Blair* v. *Charleston,* 35 L. R. A., 856. It is shown by the record that the grade of the street, to which the grade of the sidewalk conformed had existed for many years; that the street had been worked according to that grade; that it was a natural grade adopted by all street commissioners of the city prior to the establishing of a. city engineering department; that houses had been built along

the street and sidewalks laid with reference to and in conformity with the natural grade—certainly, these facts would make it an established grade and give the abutting property owners a right to consider and treat it as such. When we consider, as coupled with all these facts, the further fact that, even, after the organization of an engineering department a new sidewalk was laid by the Feibelmans under the direction of the city engineer, it is clear that so far as they were concerned the grade was not only established by custom and long usage but also by the action of the engineer and gave to the Feibelmans such rights as to entitle them to an action against the city for damages consequential upon an arbitrary change of grade.

In the case of *Vicksburg* v. *Herman*, 72 Miss., 220, 221, 16 South., 434, (cited by CALHOON, J., in *Railroad Co.*, v. *Lefoldt*, 87 Miss., 317), a distinction was made between the action of a municipality in reducing the surface of a street "to a grade line for the first time established," and in changing a grade once established.

Nowhere in this record, except in the original bill, is to be found any description of any property against which a lien is sought to be established. In none of the ordinances or proceedings of the board is the property described. In the ordinance of October 3rd, a lien is sought to be established against "A. and F. Feibelman" for $220.04 and so on through the list.

We respectfully submit that the ordinance was and is void—certainly it is not capable of enforcement.

The case at bar is easily distinguished from the case of *Edwards House Company* v. *City of Jackson*, 91 Miss., 429, 45 South., 14, both in fact and in law—that case being one of the street paving and this being one of sidewalk laying. In the *Edwards House case* this court expressly held that every notice required to be given was given; in this case, the chancellor has found, as a fact, that none of the notices required to be given were given.

In the *Edwards House case* the omission of the first ordi-

nance to describe the material, etc., was cured by a subsequent resolution in which the material was specified; in this case there was no subsequent resolution to cure the omission.

. In the *Edwards House case* the city proceeded under Code 1892, § 3011; in this case the city proceeded under Code 1892, § 3011, as amplified and enlarged by section 326 of the Revised City Ordinances.

In the *Edwards House case* "after the completion of the work and the report of the commissioner, the board adjudged this sum to be due, and a charge on the property of the defendant company described in the petition hereto"; in this case, while the record does not show a report of the commissioner, but rather the "estimate furnished by the city engineering department to the City Clerk" the resolution does not establish these items as the charge upon the property of the defendants but rather as a lien upon the person of the defendants.

*Robert Powell,* for appellees and cross-appellants, H. C. Strauss, Mrs. Strauss and Miss Strauss.

Notwithstanding the fact that the city was acting alone under delegated authority, and must act strictly within the limits of the authority conferred, and notwithstanding the law that statute authorizing local assessments must be strictly construed and strictly pursued (See Elliott on Streets and Roads, Sections 544 and 545) every act of the city in this connection failed to comply with the law and was illegal and void.

Take the first ordinance requiring the construction of the sidewalk. This was supposed to be passed under authority conferred by Code 1892, §§ 3011 and 3012, and under Chapter 32, Sec. 326, of the revised ordinances of the City of Jackson. The court will notice that Chapter 32 of the revised ordinances of the city of Jackson, adds additional requirements to the statute, Code 1892, §§ 3011 and 3012, in that it requires that the ordinance requiring sidewalks to be laid "shall describe the kind and length of sidewalk to be constructed, with the name of abutting land owners." The city has the right to add this additional re-

quirement, and when added it must be complied with. (See Elliott on Streets and Roads, Section 575, page 600; *Lowell* v. *Whitlock,* 11 Cushman, 391; *Starr* v. *Burlington,* 45 Iowa, 87). This ordinance does not comply with the law.

1st. It does not describe the kind and length of sidewalk, the height of embankment.

2nd. It does not name the abutting owners.

Notice was not given as required by law, either of the passage of the ordinance or the intention to construct. The city's witnesses do not contend that it gave any notice whatever to some of the property owners, and all the property owners swear they received no notice. Again, the notice which was supposed to have been given does not contain any specification for the sidewalk which was necessary to make it legal. (See 36 American Digest, Sec. 747, page 763, note D; *Taft* v. *Charleston,* 98 Mass., 583; *Johnson* v. *Oshkosh,* 21 Wis., 184.)

The ordinance of the board assessing the property with the costs of the sidewalk is void because there is no description whatever of any abutting property upon which a lien is sought to be established. Undoubtedly a lien cannot be fixed on property without describing it in some way. (See Elliott on Roads and Streets, Sec. 597 and numerous cases cited).

This ordinance seems only to fix a personal liability on the abutting owners, which cannot be done. (See Elliott on Roads and Streets, Sec. 567.)

For these reasons the city was a trespasser *ab initio,* and is responsible for all damages it occasioned.

If the city had proceeded legally, it had no power to change the grade in front of the Strauss property without first paying adequate compensation. In this connection, under the evidence we claim that the grade of the old sidewalk was fixed by the city, but whether this is true or not no difference, for the evidence shows that this street had been opened and used and worked by the city upon a natural grade, and for many years had been built up on each side with costly houses with reference

to such grade, and this makes the natural grade an established grade. See 35 L. R. A., 852, citing numerous cases; 23 L. R. A., 658; 3 L. R. A. (New Series), 409. These cases are all under constitutions similar to our constitution providing that property shall not be taken or damaged without due compensation.

There being an established grade, the city cannot raise it without previous compensation. See *Lefoldt* v. *Yazoo, etc., R. R. Co.,* 87 Miss., 317, 39 South., 459.

Assuming therefore, that we are entitled to damages, what should be the measure? First, we say that the amount of our damages is not to be decreased by any supposed advantages to us. See Code 1892, § 1690. *Sullivan* v. *LaFayette County,* 61 Miss., 271.

The cost of adjusting the property to the new grade is one of the elements of damage. 27 Am. & Eng. Enc. L. (2nd Ed.), 143, 144; *Chase* v. *Portland,* 86 Maine, 367; *Coke* v. *Ansonia,* 66 Conn., 413; *Augusta* v. *Schrameck,* 96 Ga. 426; *Thompson* v. *Keokuk,* 61 Iowa, 187; *Topeka* v. *Springfield,* 122 Mass., 110; *McCarthy* v. *St. Paul,* 22 Minn., 527.

The difference in the market price just before and just after the change of grade is the true measure of damages. *Meridian* v. Higgins, 81 Miss., 376, 33 South., 1.

But the cost of adjusting the property to the new grade serves to determine the difference.

MAYES, J., delivered the opinion of the court.

The mayor and board of aldermen of the city of Jackson ordered the property owners living on South State street to construct certain sidewalks between certain streets, designated in the ordinance. The property owners along the street designated, failing to make the proposed improvement as required by the ordinance, the city constructed the walks, raising the grade of the street at certain points, lowering it at others, and widening the street in certain other places. After this was done,

Lula B. Williams and the other defendants instituted their sev-
-eral suits in the circuit court, claiming damage for the action of
the city in widening the street and raising and lowering the grade
in front of their property. While these suits were pending in
the circuit court, and for the purpose of avoiding a multiplicity
of suits growing out of the same transaction, the city filed a bill
in the chancery court enjoining the defendants from prosecut-
ing their suits in the circuit court, and further praying that all
the defendants be compelled to come into the chancery court and
litigate their claims in one suit. The bill has a double aspect,
in that it also seeks to charge the property owners with the cost
of constructing the sidewalks in question and to have this cost
enforced as a lien on the abutting property. The second feat-
ure of the bill is a proceeding under Code 1892, § 3012. The
defendants all answer the bill of complaint, asserting their claim
for damages in the various sum set out in the answers. The an-
swers deny the validity of the ordinance under which it is sought
to charge their property with the cost of constructing the side-
walk, deny liability to the city for such cost by reason of the al-
leged invalid ordinance, deny that they are in any way benefited
by the so-called improvements, but claim that they have been
damaged by the construction of the side-walks.

The decree of the lower court denied to the city the right to
tax the property of defendants with the cost of the sidewalks,
and further allowed the defendants damages in certain amounts
set out in the decree. The city prosecutes an appeal, claiming
that the chancellor erred in not allowing the cost of the walks
to be taxed against the property of defendants, and further
erred in not denying to the defendants all relief prayed for in
the cross-bill. The defendants in the court below cross-appeal
and allege as error that the amounts allowed them as damage
were insufficient. It is shown in the record that the city was
proceeding under the powers given it by Annotated Code
1892, §§ 3011, 3012, in relation to special improvements on
the streets, and that it was the intent and purpose of the

city that the expense should be borne by the property own-
ers abutting the street. In order to do this, when it is intended
to fix the cost of the special improvement on abutting property,.
a special method is to be pursued by the municipality, as indi-
cated by Annotated Code 1892, §§ 3011, 3012, and unless
the municipality has complied with the method required
by the statute it cannot tax the cost of the so-called im-
provement on the abutting property. Does the record in this
case show such compliance with the statute as would give the
municipality the power to tax the cost of this so-called special
improvement against the abutting property here?

Annotated Code 1892, § 3011, provides that "when the
mayor and board of aldermen shall deem any improvement
which requires unusual outlay and costs in excess of the
general improvement fund, of which the board shall be the
judge, on any street, lane, alley, avenue or sidewalk, or part
thereof necessary, a special tax therefor may be levied. In such
case the board shall, by resolution, declare such work or im-
provement, describing it, necessary, and publish the resolution
as an ordinance is required to be published," etc. Acting under
this section of the code, the mayor and board of aldermen
passed a general ordinance, being section 326, ch. 32, Revised
Ordinances of the city, which is broader in its requirements as.
to description than is the statute itself; but since it is our view
that, if any succeeding ordinance dealing with the subject of
special improvements complies with the statute, such succeed-
ing ordinance is valid, even though it be not a compliance with
a prior ordinance attempting generally to fix a rule upon this
subject, we take no notice of section 326 of the Revised Or-
dinances. Whenever the municipality follows the requirements.
of the statute, that is sufficient. The first ordinance passed by
the mayor and board of aldermen looking to the construc-
tion of the sidewalks in question was on the 6th day of Decem-
ber, 1904, and is as follows, viz.:

"An ordinance requiring the construction of sidewalks on the

west side of State street, from Tombigbee street to Silas Brown street, and on both sides of Silas Brown street, from State street to the A. & V. R. R., and on Silas Brown (north side) from the A. & V. R. R. to the Pearl River Bridge.

"Section 1. Be it ordained by the mayor and board of aldermen of the city of Jackson, that it is necessary that sidewalks be built on the west side of State street, from Tombigbee street to Silas Brown street, and on both sides of Silas Brown street from State street to the A. & V. R. R., and on the north side of Silas Brown street, from the A. & V. R. R. to South Jefferson street, and that the property owners abutting said sidewalk be notified to build same or petition against building of same in twenty days.

"Sec. 2. That the street commissioner be ordered to use such dirt for the excavation on South State street in front of the school lot as may be necessary to raise the sidewalk hereby ordered laid.

"Sec. 3. That for cause this ordinance shall take effect and be in force from and after this date."

This ordinance was the only ordinance passed on this subject and was duly published. As a condition precedent to the right of the city to require walks to be laid at the expense of the abutting property owners, it was not only necessary that it declare such work or improvement necessary, but it was just as essential to go further and describe what work or improvement was intended should be placed there. All that the ordinance declares is that it is necessary that "sidewalks be built on the west side of State street, from Tombigbee to Silas Brown street." This cannot be said in any sense of the word to be a description of the work to be done. What kind of sidewalks? How wide shall they be? Where shall the property owner find out these things? No reference is made in the ordinance to any plans and specifications on file in any of the city offices where this information may be had. The statute contemplated that full notice

should be given to the taxpayer of all that was to be done, that he might have full opportunity to consider the cost and determine whether he would submit or protest. A walk is not described by merely calling it a "sidewalk." The information that the law contemplated that the municipality should give to the property owner, was not conveyed by the ordinance, and the ordinance was on that account void. As to all essential things statutes of this nature are to be strictly construed.

Counsel for appellants contend that this ordinance was not void because of the failure to describe the kind and width of the sidewalk, because, they say, under the general ordinances of the city such specifications could be found; but no reference is made in the ordinance to the general ordinance. We do not think this contention sound. In the ordinance declaring the improvement necessary must be found the description of the work, or there must be embraced in it a reference to such plans and specifications on file with the city as would give the information, or it must be placed in some subsequent ordinance. This was what was done in *Edwards House Co.* v. *City of Jackson,* 91 Miss., 429, 45 South., 14. The ordinance declaring the work or improvement necessary must have in it such facts as will fully enable the property owner to find out what work is required to be done. The minute details of the work need not be set out in the ordinance, provided the ordinance incorporate the plans and specifications by which the work is to be constructed by reference; such plans and specifications being then on file. This is what is held in the *Edwards House case.* When a municipality is proceeding under Annotated Code 1892, §§ 3011, 3012, it is not proceeding under its general powers of ordinances, but is proceeding under the special powers conferred on it under special circumstances, and it must pursue with strictness all the conditions precedent to its right to exercise the particular power. A compliance with these conditions constitutes its power to act, and is jurisdictional in its nature. Mere irregularities and informalities will not invalidate the proceed-

ing; but when there has been a substantial noncompliance with the statute it is fatal to the proceedings, and the failure to duly inform the property owner, in an ordinance duly published, of the kind and character of the walk intended to be laid, thereby failing to give him such information as would enable him to intelligently determine whether he desired to protest against the intended improvement, is a fatal departure. It is manifest from the statute that the legislature intended to give the property owner every opportunity to act intelligently and with full knowledge.

But if we were wrong as to the invalidity of this ordinance, still the city was without power to tax the cost of constructing these sidewalks against the abutting property, because the five days' notice required by Code 1892, § 3012, was not served on the property owners as required. The chancellor expressly adjudicated this, and the record fully sustains this finding. The five days' notice required to be served on the property owner is not of necessity for the improvement merely, as is argued by counsel for appellant, for that has been determined by the mayor and board of aldermen; but the five days' notice must be a notice to the owner to construct the walk, or on failure the city would do so. Since both the ordinance and the five days' notice were void it follows that the mayor and board of aldermen were without authority to require the property owners to lay the walks; and, being without authority, they could create no debt which could operate as a lien on the abutting property for the laying of these walks. Neither the property, nor the owner, was liable for the cost of the improvement. It follows from this that the decree of the chancellor disallowing the claim of the city for the cost of the improvement must be affirmed on direct appeal.

We approach now the consideration of the questions raised by cross-appellants. They claim that their property has been damaged by the action of the city in raising and lowering the grade of the street in laying the walks, and the evidence supports their claim. It is further claimed by some of the defendants that the

city has not only damaged their property, but has torn down fences and destroyed shrubbery located on their private property, and actually taken the property of some of the defendants, varying in width from one to five feet, being a strip of property abutting the street and formerly in the yards of defendants and belonging to them. The grade of the street has been so raised as to create a small levee in front of the property of some of the defendants, leaving the property below the level of the street and interfering with the natural flow of the water. Nothing is now so important to the private citizen as to the question of the extent to which his right of private property may be invaded by a municipality and taken or damaged for a so-called public use without adequate compensation being made to him for such taking or damage. The right which a municipality has to take or damage private property for public use is no greater because it has an element of sovereignty in it than is that of any other person or corporation having the eminent domain power. No milder or more liberal rule of interpretation of the constitution will be indulged in where the taking or damaging is done by a municipality than is to be applied to all alike. The private citizen is no more called upon to allow his property to be taken or damaged for a public use by a municipality without adequate compensation than he is required to submit to the taking or damage by any other corporation. The tendency of the modern municipal governments is too frequently towards an ignoring of private rights of property, and in many instances border on the despotic. Our constitution is broad enough to curb within proper limits such tendency, and to fully and adequately protect each and every property owner, and it is the duty of the courts to see that the rights secured to private persons are enforced with unvarying strictness. In the case of *McElroy* v. *Kansas City* (C. C. A.) 21 Fed., 260, the court said: "The urgency of the so-called public improvement rests as a constant menace upon the sacredness of private property, and no duty is more imperative upon the courts than a strict enforcement of

constitutional provisions intended to protect every man in his own." Section 17 of the constitution of the state provides that private property shall not be taken or damaged for public use, except upon due compensation being first made to the owner, etc. Under this section of the constitution the citizen finds his protection, and when there is the slightest invasion of the property rights of the private citizen for a public use, thereby bringing to him damage, he is entitled to recover. Since the decision in the case of *City of Vicksburg* v. *Herman,* 72 Miss., 211, 16 South., 434, it has been settled that the citizen has a right to recover against a municipality for damage sustained by the raising or lowering of an established grade. To go over this discussion again, in view of the decision, is entirely unnecessary.

But counsel for appellant argue that there should have been no allowance of damage, for the reason that the chancellor erroneously found as a fact that the city had previously established a grade, when as a matter of fact the old sidewalks were laid on the natural surface of the earth, without the city ever having established a grade. Under our constitution it can make no difference whether the damage is occasioned by the initiation of the grade for the first time or the altering of an establishd grade. *Blair* v. *City of Charleston,* 43 W. Va., 62, 26 S. E., 341, 35 L. R. A., 852, 64 Am. St. Rep., 837; 27 Am. & Eng. Ency. of Law (2d ed.), p. 142, and citations; *Werth* v. *City of Springfield,* 78 Mo., 117. Under our constitution, where property owners have built their property with reference to a particular grade in a municipality, that grade cannot afterwards be changed, so as to produce damage to the property owner, without compensating him for the damage done. This is just as true of a case where a municipality has failed theretofore to establish a grade, and initiates it for the first time, as of the case when, once having established it, it is changed. The natural surface of the street, acquiesced in for a long while by the city, and to which the city has allowed its citizens to conform their buildings, may fix just as firmly an established grade,

within the meaning of the constitution prohibiting private property from being taken or damaged without due compensation, as if fixed by a corps of engineers. Nothing contrary to this is held in the case of *Vicksburg* v. *Herman,* but the doctrine herein declared is expressly recognized there. The only question is: Has there been a taking or damaging of private property for public use? If there has been either, no matter how insignificant may be the damage, the private person finds his protection in the constitution of the state.

Under the facts of this case the decree of the chancellor did not allow sufficient damage to cross-appellants. The testimony of the cross-appellants stands uncontradicted as to the amount of damage sustained by them, and while it is manifest that even under their testimony they claim more than is properly allowable, yet as the record now stands the damage allowed by the chancellor was insufficient. We are not to be understood as intimating how much the chancellor should allow, but leave this question to be determined on a fuller hearing, when the city has had an opportunity to controvert the question of damage. If any of the property of defendants has been taken, the value of the amount of land so taken should be allowed to the owner. If the city has destroyed the fence of any of the defendants, the value of the fence is another element of damage that should be allowed the particular owner of same. If the city has destroyed the shrubbery of any of the defendants, that is another element of damage. Whenever there has been a taking of private property for public use, the amount of the recovery should be the value of the property taken, no matter what may be the character of the property. When there has been merely a damage done to private property, which is peculiar to the owner, not shared in by the public at large, the true rule for the measure of damage is to be found in the case of *Meridian* v. *Higgins,* 81 Miss., 377, 33 South., 1. There is no analogy between the case now presented and the case of *Edwards House Company* v. *City of Jackson.* There was no contention in the *Edwards House case* of

the taking or damaging of private property for public use.   The
cases are quite distinct, both in fact and purpose.

The case is affirmed on direct appeal, and reversed on cross-
appeal, allowing all parties to take such further testimony on
the questions involved as they may deem proper.

*Reversed and remanded.*

WHITFIELD, C. J., delivered the following special concurring
opinion.

I think this case should be affirmed on direct appeal, but not
for the reasons given in the opinion in chief.   The ground on
which I think we are bound to affirm is that the record shows,
according to the testimony of five witnesses against one, that the
five days' notice required by law to be given for "the necessity
for the improvement," in the language of the statute and of the
ordinance, was not given.   These five witnesses testify most posi-
tively, emphatically, and in a most absolute fashion that no no-
tice of any kind whatever relating to the paving was ever given
to them.   The chancellor has found as a fact, on the weight of
the testimony, that this is true, and, having so found, he was
necessarily compelled to hold the special ordinance void.   The
opinion in chief rests the voidness of this special ordinance upon
the single ground that it failed to prescribe the width of the
pavement and to describe the material out of which it was to be
made.   From this view I emphatically dissent, for the reasons
now to be stated.

Chapter 32 of the Revised Ordinances of the city of Jackson,
in evidence in this case, sets out fully and specifically general
ordinances relating to sidewalks, how they shall be constructed
or repaired, how the specifications therefor shall be dealt with,
and every other particular relating to sidewalks; and in section
330 and section 331 it is specially provided as follows:

"330. *Specifications.*—Every sidewalk hereafter constructed
shall have a surface not inferior to that of a well-laid pavement
of all hard brick on a good foundation, except by special permis-

sion of the mayor and board of aldermen, and shall have a curb of stone or of brick set in cement mortar, provision being made for conveying the surface water, not over the pavement, but through a surface drain beneath it. For the materials and manner for constructing and repairing sidewalks and curbs, the city engineer shall prepare specifications, which shall be on file in his office for inspection.

"331. *Width and Elevation.*—The width of the sidewalk and elevation of the curb shall be the same for both sides of the street, whenever practicable. The width of each sidewalk from curb to property line shall be between one-fifth and one-sixth of the total width of the street, and, more specifically, shall be that width shown by the standard cross-section of the street adopted and on file in the office of the city engineer: provided that any property owner may, if he so elect, increase the width of the sidewalk by extending it inside the bounding property line, this added width being paved and maintained in the same manner as the rest of the sidewalk. The width paved shall be the entire width on streets paved with vitrified brick and on those with sidewalks six feet and less in width. On other streets at least half the sidewalk width shall be paved, this pavement being in any case not less than six feet wide and being contiguous to property line, or not more than three feet from it: Provided, that on North street, between Amite street and Fortification street, each sidewalk shall be twenty feet wide and paved at least eight feet in width next to the property line. The location of shade trees and of poles, if on the sidewalk, shall be that shown by the standard cross-section."

Here, then, is a general ordinance, full, complete, and specific in every detail, as to the width of the pavements and the kind of material out of which they are to be constructed. Most manifestly this general ordinance is necessarily compelled to be read in connection with every special ordinance relating to sidewalks that may from time to time be passed by the city. It certainly cannot be sound to hold, as the majority do hold, that every spe-

cial ordinance must be read by itself, and not with reference to this general ordinance, so that, unless each special ordinance for itself sets out the width of the sidewalk and the materials out of which it is to be constructed, etc., such special ordinance would be void. It might just as well be held (indeed, it would be logically necessary to hold), in that view, that everything in the general ordinances embraced in chapter 32, should be set out in every special ordinance. There is no escape from this result. If it be true that you may disregard sections 330 and 331 of chapter 32, and must set out the width of a sidewalk and the material out of which it is to be made every time the city may order a sidewalk to be made, just as certainly, if logic be logic, you must also set out, in every special ordinance, all the other particulars provided for in said chapter 32 relating to the construction of sidewalks. Fish cannot be made of one section of this chapter, and fowl of another. It seems to me too obvious for discussion, therefore, that the city had the right to pass such general ordinances as are set out in chapter 32, in so far as they conform with Annotated Code 1892, §§ 3011, 3012, wherein shall be stated once for all, or until the general ordinances of the city should be changed, all that need be set out with respect to the construction of sidewalks, as, for example, the width of the sidewalk and the material out of which it is to be made, and what should be done with respect to specifications, etc., and that every special ordinance passed by the city, relating to construction of sidewalks, while said chapter 32 is in force, shall necessarily have read into it all the provisions of said chapter 32 on the subject. I cannot entertain a doubt of the soundness of this view on the subject; and, if it be sound, then my brethren have announced a manifestly erroneous view in the majority opinion, when they declare that this special ordinance, passed while this chapter 32 was in force, had itself to prescribe the width of the pavement and describe the materials out of which it should be constructed. I regard this holding as, in effect, contrary to the principles announced in the

case of *Edwards, etc., Co.* v. *Jackson, supra,* recently decided. See *Same case,* 45 South., 14, syllabus paragraph 2. It follows, therefore, that while I dissent entirely from the opinion in chief, setting out the reasons for affirming the decree on the direct appeal, I yet concur in the result, but for the single reason which I have myself stated above.

Coming to the cross-appeal, I have one or two observations to make:

First. I think it is perfectly within the power of a city, although it may have had sidewalks once constructed to a particular grade, to have the same sidewalks reconstructed to different grades, in its development, in the course of its expansion and growth from decade to decade, as the needs and interest of the city may require, in each particular decade. What might be a perfectly sufficient sidewalk for a hamlet would not do for that hamlet when it gets to be a town, nor for that town when it gets to be a city. What may do very well for a city of the smallest allowable population under the statute will not do at all for a city of fifty thousand or more people, with all the accompanying elements of civilization naturally belonging to such a city, in its advanced growth and development. It seems to me that what was said in the case of *Nugent* v. *City of Jackson,* 72 Miss., 1040, 18 South., 493, covers perfectly all that need to be said along this line. Cities are not to be hampered in their advance from rude and primitive beginnings to later and more splendid municipal conditions, necessary in modern life, by restricting their power to adjust sidewalks to different grades from time to time and their power to change the materials out of which such sidewalks are to be constructed. So to hold is to obstruct progress and to keep a city in its swaddling clothes forever. Of course, as held in the *Herman case,* 72 Miss., 211, 16 South., 434, all damages which an abutting proprietor may actually sustain, peculiar to himself and different from those damages which may result from the construction of pavements to his fellow citizens in common, if the evidence shows such damages were caused by the improper

or illegal construction of the sidewalk, such abutting proprietor may recover. This the constitution guarantees to him; but this is the extent of his right. It is not damage which may be sustained by reason of proper and legal construction of sidewalks, for which an abutting proprietor may recover. Such damages are incidental to residence in cities, and he who dwells in a city agrees, as part of the civil compact when he became a citizen, to bear that part of the burden in respect to all public improvements. It is only when this proper legal line is passed, and damages are inflicted or property illegally taken as the result of an improper or illegal construction of the sidewalk, that the abutting proprietor can claim to recover. I have this much to say on this particular feature of the opinion in chief on the cross-appeal, to exclude any conclusion that I concur in the view that an abutting proprietor is entitled to recover damages caused by the construction of a sidewalk merely because, once having laid a sidewalk in conformity with the city's orders, he may be thereafter, from time to time, as a city's needs demand, required to reconstruct the same sidewalks, to meet the exigencies of the city at the time of such subsequent orders.

I concur, however, in the result, also, on the cross-appeal, because, and only because, the only evidence in the case as to the amount of damage is that furnished by the cross-complainants themselves. I do not understand why it was that the city did not introduce testimony with respect to what damages, if any, were sustained. Since the chancellor had no testimony before him except that of the cross-complainants, and since their claims exceed the amounts allowed, there being nothing to rebut their testimony, I do not understand how the chancellor reached his conclusion as to amounts, and it does not seem to me that those conclusions are supported by the testimony in the record. For that reason, and that reason alone, without expressing the slightest opinion as to the true quantum of damages allowable to the defendants, I concur in the result reached in reversing the decree on the cross-appeal.

I wish to make just one other observation: It was claimed by cross-complainants that part of the lots had been bodily taken, and that they should be compensated for the value of the parts of their lots so taken. The chancellor expressly recites in his decree that he reserved that matter for future decision, when the principles of the case shall have been settled. As, therefore, the chancellor decided nothing on that proposition, we, as an appellate tribunal, can decide nothing on it; and I do not understand my brethren to have intimated any opinion on this proposition. That matter is remitted, to be decided first by the chancellor, before we shall have any power to review him on that matter. It may very well be said—in fact, I think it ought to be said—that the testimony in support of the claims for damages below takes into view very largely the value of those parts of the lots alleged to have been entirely taken; and so it appears to me the difficulty encountered by the chancellor in fixing the damages, as distinct from the value of any lots taken, if any were taken, was thereby greatly increased.

In short, on the cross-appeal, it is impossible for me to understand, in this confused condition of the testimony, and especially in view of the absence of any testimony whatever on the part of the city on this subject, how the chancellor could fix the amounts he has fixed in the decree; and for that reason alone I concur in the reversal of the decree on the cross-appeal.

*Reversed.*