WILSON *v.* CITY OF LEXINGTON.[*]

(Division A. April 22, 1929. Suggestion of Error Overruled May 27, 1929.)

[121 So. 859. No. 27418.]

214

*Corpus Juris-Cyc References: Evidence, 22CJ, section 26, p. 84, n. 68; Municipal Corporations, 43CJ, section 761, p. 500, n. 72; section 765, p. 502, n. 13; section 791, p. 515, n. 12; 44CJ, section 3030, p. 615, n. 97. As to presumption of continuance of presumed state of facts, see 10 R. C. L. 870; 2 R. C. L. Supp. 1094; 5 R. C. L. Supp. 568; 6 R. C. L. Supp. 624; 7 R. C. L. Supp. 337.

See, also, 119 So. 795.

*Boothe & Pepper,* for appellant.

*Ruff & Johnson* and *Green, Green & Potter,* for appellee.

*Boothe & Pepper* and *J. Morgan Stevens,* in reply for appellant.

218

Argued orally by *A. M. Pepper* and *J. Morgan Stevens*, for appellant, and *Garner W. Green* and *H. H. Johnson*, for appellee.

McGowen, J. This is an appeal· from an assessment made by the appellee, the city of Lexington, against the property of the appellant, G. A. Wilson, on Yazoo street in said city; the mayor and board of aldermen having levied the assessment over the protest of the appellant, who appealed therefrom to the circuit court, where the contention of. the appellee was sustained and judgment entered against the appellant, and, from this judgment appellant appeals to this court.

In 1923, the city of Lexington, by resolution of its mayor and board of aldermen, took the necessary steps to direct the special improvement of' Yazoo street and Court Square. Pursuant thereto, a contract was let to one Finch to improve this square and street, but one of the provisions therein was, when the cost of such improvements reached in slight excess of the amount of

twenty-five thousand dollars, the city reserved the right to terminate the contract and proceed no further with the paving. The proceedings of this board at this time, were conducted under chapter 260, Laws 1912. During the year 1924, Finch completed the paving of Court Square; thereupon the city exercised its option and directed that the work be proceeded with no further, and Yazoo street was not paved pursuant to the order made in 1923, and the provisional contract referred to.

The resolutions of the board of 1923 provided that the paving of Court Square and Yazoo street should be at the expense of the municipality, and the board ordered bonds issued for that purpose.

In May, 1926, the mayor and board of aldermen passed a resolution, declaring its intention to pave Yazoo street beginning at the Square and extending some distance south of the Yazoo & Mississippi Valley Railroad, the city to pay one-third, and the property owners two-thirds, of the cost thereof. On June 1st, the appellant, Wilson, and others, filed objections to the above paving project, setting up the action of the board in May, 1926, and on June 4, 1926. Thereupon the board rescinded or repealed the ordinance as to their intention to pave Yazoo street. On June 11, 1926, the board passed its resolution of intention to pave Yazoo street from the "Square" to a point nine inches south of the Yazoo & Mississippi Valley Railroad under and by virtue of chapter 194, Laws 1924, the municipality to pay one-third, and the abutting property owners two-thirds, of the cost. On July 2, 1926, the day set for the hearing of any protests against such project, the board met again, and, no protest being filed, it passed the resolution to pave that part of Yazoo street heretofore mentioned. Thereafter, on July 6th, the contract was let to Finch. Although the contract provided for a bond to be given by the contractor for the performance of the work, none appears to have been taken. The paving on Yazoo street was com-

pleted by the contractor, checked by the engineer, and final settlement was made with the contractor prior to June 11, 1927.

On June 10, 1927, Neilson, the mayor, issued a written notice to J. N. Hall, J. G. Herbert, J. K. Rhyne, G. S. Beall, Jr., and W. P. Hammett, calling a special meeting of the mayor and board of aldermen to be held at three p. m., Saturday, the 11th day of June, 1927, at the regular place of meeting, mentioning several items of business to be considered, among which were: "To pass, adopt and approve ordinances levying special assessments against certain property on Tchula street, Carrollton street, Depot street, Boulevard street, Spring street, and Yazoo street for special improvements on said streets, and for notice of such assessments and fixing a time for hearing protests against and objections to such special assessments."

There appears in the record of this case the following:

"To H. M. Roach, Marshal:

"You are directed to personally serve the above notice on each of the above-named aldermen at least three hours before three o'clock p. m. on Saturday, June 11, 1927.

"Witness my signature this the 10th day of June, 1927, at 9 o'clock a. m.

"E. T. NEILSON, Mayor."

"To E. T. Neilson, Mayor:

"I have this day executed the above writ by delivering to each alderman, J. K. Rhyne, G. S. Beall, Jr., and W. P. Hammett a true copy of this writ personally.

"This the 11th day of June, 1927, at eleven o'clock a. m.

"J. M. ROACH, Marshal."

The clerk of the board testified that the notice and the return of the marshal thereon appeared on the minutes of the mayor and board of aldermen kept by him, and that he had signed the name of J. M. Roach, marshal, to same a few days prior to the hearing of this cause in

the circuit court. It will be observed that no mention is made of the aldermen Hall and Herbert by the marshal, or that service was had upon them.

On June 11, 1927, the mayor and the three members upon whom the marshal had served notice made and passed a resolution wherein they fixed the cost of the improvement on Yazoo street, assessed the property of the appellant, G. A. Wilson, and directed the clerk to make up the assessment roll and to give notice that on Tuesday, July 5, 1927, they would take up and hear objections to the paving assessment. On that day the board convened, but, because of unfinished business, the meeting was continued to July 6th, on which day the appellant and others objected to any assessment being levied against their property. The main objection of the appellant, the written notice of which was filed with the board, was that the board was without power to levy an assessment under the laws of 1924 because of its action heretofore recited in 1923 under the laws of 1912. The board made some corrections in the assessments before it finally approved and confirmed them.

The appellant filed his appeal to the circuit court, and there, on motion of the appellee, the city of Lexington, the court required him to specifically point out his objections to the assessment in a bill of particulars. Objections fifteen and sixteen by the appellant were to the effect that the city authorities were without authority of law and without jurisdiction in the premises to make and levy the assessment against objector's property on Yazoo street, and that assessments against the objector's property were made without notice and without authority of law, and the expenses incurred therefor were without notice and without authority at law.

There are many grave and serious objections urged as to the validity of this record in authorizing the levy of an assessment against the appellant's property sit-

uated on Yazoo street, but we shall set out only the facts peculiarly applicable to the one point which we shall consider, and which will dispose of this case.

It is here contended that the proceedings of the mayor and board of aldermen at the special meeting held on June 11, 1927, was a nullity—void and ineffective to authorize an assessment against appellant's property. Chapter 194, Laws 1924, is embraced in Hemingway's 1927 Code, sections 6983 to 7000, both inclusive.

Section 6987, Hemingway's 1927 Code, provides for front foot assessment in its plan of paving; section 6988, Hemingway's 1927 Code, provides for the several items that shall go to make up the costs of the special improvement, and further provides that:

"When the improvement has been completed, the governing authority shall ascertain and determine the cost of the improvement and declare the same by resolution. Upon the completion of any improvement hereunder the governing authority of the municipality shall cause to be prepared a roll or list to be called the 'assessment roll' showing the names of the property owners, and, opposite each name a description of each parcel of land. Such roll shall be entered in a well-bound book prepared for that purpose, which shall contain appropriate columns in which payments may be credited. Said book shall be known as 'assessment book for local improvements.' It shall be a public record and the entry therein of any assessment shall be and constitute notice to the public of the lien against the land so assessed, and no other record or notice thereof shall be necessary to any person or corporation for that puropse. No error, omission or mistake in regard to the name of the owner shall be held to invalidate any assessment. After the completion of the said assessment roll it shall be delivered to the clerk of the municipality, or to the officer performing the duties of such clerk who shall thereupon give a notice by publication in some newspaper published in said municipality

that the assessment roll (for that piece of local improvement made) has been delivered to him and is open for inspection at his office; and that at a time and place therein mentioned, not less than fifteen (15) days from the date of the first publication, the governing authority of said municipality will meet to hear and determine any objections or defense, assessments shall be made and apportioned in the manner fixed by the resolution of the governing authority determining to proceed with the improvement."

After the above-quoted part, there follows in the statute directions as to railroads and other public utilities, and as to storm sewers, and then, to quote the statute:

"The owner of any property assessed for an improvement, or any part having an interest therein may appear at the time and place fixed for said hearing and object to the proposed assessment against the property or to the amount thereof. The governing authority of the municipality shall hear and determine all objections and protests to the proposed assessment, under such reasonable rules and regulations as it may adopt. At such meeting, or at any adjournment thereof the governing authority may alter, change or correct any assessment, provided, however, that no assessment shall be increased without notice to the owner of the property. The governing authority shall, by resolution, approve and confirm all assessments as finally fixed and adjusted at the said hearing and such assessments shall, from the date of such confirmation, constitute a lien upon the respective lots or parcels of lands and other real property upon which they are levied, superior to all other liens except those for state and county taxes. All persons who fail to object to the proposed assessments, in the manner herein provided, shall be deemed to have consented to and approved the same. Any property owner aggrieved by the decision of the governing authority may appeal to the circuit court in the manner allowed in such cases by section 8

of the Code of 1906, and the judgment on appeal shall be as provided by section 81 of the Code of 1906.''

We are of the opinion that the first meeting, provided for in section 6988, is a fundamental, necessary precedent step to be taken by the mayor and board of aldermen in order to be able to take the last step, which is a confirmation of the assessment, final and conclusive, unless objected to by the property owners. Was there a special meeting held in accordance with the statute? Let it be observed that only a bare majority of the aldermen, three of them, were present, that these three were the only ones served, or attempted to be served so far as the return of the officer shows, and that, at this meeting, these three, a bare majority of the aldermen, so far as the appellant's property was concerned, took the most important step in the whole proceeding provided for in this law. For aught that appears here, these two aldermen may have been in town that day, ready, able, and willing to discharge their duties, if they had been served with notice of the meeting. They decided what the items of cost would be, the amount of these items, including engineering fees, salaries, including engineers' and inspection cost, proportionate part of the salaries and expenses of the engineering staff, and the cost of the issuance of the bonds—in other words, everything that went to make up the costs to be assessed against the appellant's property was determined. It is true that the law is crude as to what the assessment roll shall contain, but it is unmistakable that this assessment roll is the authority for the collection of the special assessment when its efficacy is determined and fixed at this meeting. Then too, this meeting is absolutely essential, as the last meeting cannot be held and the notice cannot be given to the taxpayer until the facts necessary to be determined and adjudicated by the board have been thus determined. But the fixation of the costs of improvement is the controlling point here, which we cannot overlook in deciding—as we

have—that the holding of such meeting is a fundamental and essential thing, without which, so far as the appellant is concerned, no valid assessment can be levied against his property.

In the light of this record, was the board authorized to pass any binding resolution at this special meeting? Section 6928. Hemingway's 1927 Code, provides for regular meetings. Section 6929 is the only authority for holding a special meeting, and is in the following language:

"The mayor or any two aldermen may, by written notice, call a special meeting of the mayor and board of aldermen for the transaction of important business. The notice must state the time of meeting and distinctly specify the subject-matters of business to be acted upon; it must be signed by the officer or officers calling the meeting, and must be served by the marshal, or any policeman, on the members of the board, including the mayor, who have not signed it, and who can be found personally, at least three hours before the time fixed for the meeting: said notice, with the indorsement of its service, shall be entered on the minutes of the special meeting, and business not specified therein shall not be transacted at the meeting; but a member of the board shall not receive pay for attending a special meeting."

It will be noted that the provisions of this statute are mandatory, and that the marshal is positively required to serve the notice on the members of the board personally, and this notice with indorsement of its service is required to be entered upon the minutes of the special meeting.

This court, in the case of *Kidder* v. *McClanahan*, 126 Miss. 179, 88 So. 508, held that a call for a special meeting served by the marshal on the members of the committee within less time than three hours before the time fixed for the meeting was mandatory and jurisdictional, and, where the statute was not complied with in that

respect, the proceedings of such meeting were void. In 44 C. J., p. 228, section 2386, it is said: "Statutory proceedings preliminary to the making of a public improvement are *in invitum,* and a failure to adhere with substantial strictness to the provisions of such statutes will generally deprive municipalities of jurisdiction to make the improvement." See, also, *City of Jackson* v. *Williams,* 92 Miss. 301, 46 So. 551; *City of Jackson* v. *Kenny,* 122 Miss. 594, 84 So. 689; *City of Jackson* v. *Tucker,* 136 Miss. 787, 101 So. 708; *City of Jackson* v. *Williams,* 92 Miss. 301, 46 So. 551; *Edwards House Co.* v. *City of Jackson,* 138 Miss. 644, 103 So. 428, 42 A. L. R. 625.

The mayor and board of aldermen of Lexington is a body of limited and special jurisdiction, and the minutes of this board must show a compliance with the statute in order to transact any business at a special meeting. To our minds, the minutes of the board in this case, if they show any return at all, show a service on only three members, with the other two members not mentioned. We can indulge no presumption in favor of an officer's return which is unsigned and contains no statement of any action on his part which complies with the statute requiring that the members of the board be personally served who can be found. But counsel for appellee say that the notice itself recites that theretofore a regular meeting was not held because three of the members were absent and one sick. That is not even persuasive of the proposition that this record does not show any attempt to serve two members of the board with the notice, or that they could not be served. These statutes are to be strictly construed, and must be complied with—especially is this true where the most important action in the whole proceeding under this chapter, so far as the taxpayer is concerned, is taken, to-wit, what the improvement is to cost, and the amount of the lien to be declared upon his property. It may be said that opportunity at the next meeting was given the property owner, the ap-

pellant, to make complaint and defense of any irregularity. But he was not presented with a valid notice of assessment. The assessment was a mere scrap of paper —a nullity. It was a void proceeding, and the appellant protested at the time and place that the law permitted him to protest; and it cannot be said that his appearance for the purpose of protest conferred jurisdiction upon the board. To so hold would be idle and futile, and a mockery. If he does not appear and protest, the judgment is conclusive against him; and, if he does, he enters his appearance although he is objecting to everything they are seeking to do to him.

It may be seriously questioned whether a less number than the entire personnel of the board can hold a special meeting, or fix the cost in a special improvement project. But this question we are not called upon to decide.

Counsel for appellee ask us to presume that the reason the marshal did not serve the notice of the special meeting was that two of the board members were absent from the town. If he had so said in his return, another question would be presented, but, in the face of the fact that he makes no mention of these two, the notice, with the return thereon, overcomes any presumption which might be indulged. The return is a fact, and presumptions yield to facts.

Counsel for appellee next insists that section 6991, Hemingway's 1927 Code, cures all defects of omissions in the assessment, and hence the assessment is valid: This section reads:

"No omission, informality or irregularity in the proceedings in, or preliminary to, the making of any special assessment shall affect the validity of the same, where the assessment roll has been confirmed by the governing authority, and the assessment roll and the record thereof kept by the city clerk shall be competent and sufficient evidence that the assessment was duly levied and the assessment rolls duly made and adopted, and that all

other proceedings incident to the adoption of said assessment roll were duly had, taken and performed as required by this statute. But no assessment shall be valid and legal unless the notice required herein shall have been given as provided herein.''

The difficulty that appellee encounters in assuming that position is that, before this assessment became final and conclusive, appellant appeared at the time and place given him by law, taking advantage of his right to object to such assessment by protesting against it. He objected to the assessment before it was confirmed, its confirmation was over his objection, and he appealed therefrom to the circuit court, and thence to this court. Therefore it is idle and futile to undertake to apply the curative relief contained in this statute to the situation which exists between the appellant and appellee in this cause.

We are of the opinion, therefore, that the attempted assessment of the property of the appellant on Yazoo street, embraced in the original resolution, is void, and that the circuit court should have entered a judgment in favor of the appellant, and that in not doing so the court was in error.

*Reversed, and judgment here for appellant.*